UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE GOLDEN,

                        Plaintiff,

v.

HENRY FORD COLLEGE,

                        Defendant.

_____/

Civil Action No. 23-10047

David M. Lawson
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 12)

## I.   INTRODUCTION

This is an employment discrimination case brought by *pro se* plaintiff Catherine Golden ("Golden") against her employer, Henry Ford College ("Henry Ford"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* (ECF No. 1). Golden principally alleges that Henry Ford failed to promote her based on her race and sex, and also alleges a vague Title VII retaliation claim. (*Id.*). Golden asserts that she filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 22, 2020 (*id.*, PageID.5), and that she received her "right to sue" letter (the "RTS Letter") on October 7, 2022 (*id.*, PageID.5, 7). The docket reflects that Golden filed her complaint on January 6, 2023 (ECF No. 1) (the "Filed Complaint").

On July 20, 2023, Henry Ford filed a motion to dismiss Golden's complaint, arguing that it was required to be filed by January 5, 2023. (ECF No. 12). On August 15, 2023, Golden filed a response, in which she insisted that she had actually filed her complaint on

January 5, 2023, and that she could provide "proof" of her "filing date of January 5, 2023[.]" (ECF No. 14, PageID.59). As the "proof," Golden attached a seven-page document that purports to be a filed copy of her complaint with a court-generated file stamp header of "01/05/23." (*Id.*, PageID.62-68) (the "Fabricated Complaint"). One problem: on each of the Fabricated Complaint's seven pages, the "5" in the "05" file stamp very clearly appears to be a different font size than all of the other file stamp digits.

On December 20, 2023, the Court held an evidentiary hearing on the matter, taking testimony from Golden and Richard Loury ("Loury"), the Court's Pro Se Case Administrator. The Court also admitted various exhibits into evidence. While the Court will discuss the testimony and documentary evidence in detail below, in short, it showed that the Fabricated Complaint was actually a copy of the Filed Complaint, altered to make it appear as if it had been filed on January 5, 2023.

In sum, because the deadline for Golden to file her complaint was January 5, 2023, and because her Filed Complaint was actually filed on January 6, 2023, Golden's complaint is untimely, and Henry Ford's motion to dismiss should be granted on that basis. In addition, even if Golden could show that she actually had until January 6, 2023, or later to file her complaint,[1] Golden's case should be dismissed on account of her brazen fraud upon the Court and Henry Ford.

---

[1] As discussed below, the January 5, 2023 deadline for Golden's complaint is based on the date she admitted receiving the RTS letter from the EEOC. If she somehow was wrong about her receipt date, that would impact her complaint's due date.

## II.     REPORT

### A.      Factual and Procedural Background

#### 1.      *Golden's Filed Complaint and Correspondence with the Court*

The copy of Golden's complaint that appears as ECF No. 1 on the docket (*i.e.*, the Filed Complaint) is signed by Golden and reflects "01/06/2023" *above* the form's "Date of signing" line:

Date of signing:     01/06/2023
_____

Signature of Plaintiff     *Cathy Golden*
_____

Printed Name of Plaintiff    Cathy Golden
_____

(ECF No. 1, PageID.6).

As the following example from page 1 of Golden's Filed Complaint shows, all of the file stamp header digits appear completely uniform:

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.1   Filed 01/06/23   Page 1 of 7

Golden "uploaded" her Filed Complaint using the Court's "Pro Se Electronic Document Upload Program"[2] (ECF No. 2), and two records from that Program show that she did so on January 6, 2023.  First, the Pro Se Documents Log shows that Golden

_____

[2] This Program is accessed on the Court's website, and explains:

> The Pro Se Electronic Document Upload Program is a service provided by the Court. This program can only be used by non-incarcerated parties not represented by an attorney who need to submit documents to the court for filing.  **The date the document was received will be the filed date**, if received at 12:00 am or after, the filing date will be the next day.

(http://www.mied.uscourts.gov/index.cfm?pageFunction=proSeDocs) (last visited February 23, 2024) (emphasis added).

uploaded her complaint and attachments on January 6, 2023, at 14:44:56.  (ECF No. 25 ("Tr."), PageID.180-86; ECF No. 24, PageID.130).  Second, the Program sent Golden a confirmation e-mail one minute later, attaching a copy of what she had submitted, *i.e.*, the Filed Complaint.[3]  (ECF No. 24, PageID.132-39).  Importantly, just like the Filed Complaint that appears on the docket, this "confirmation copy," which bears no file stamp header because it had not yet been "filed" on the docket, reflects "01/06/2023" above the "Date of signing" line.  (*Id.*, PageID.139).

Golden alleged twice in her complaint that she received the RTS Letter on October 7, 2022.  (ECF No. 1, PageID.5, 7).  However, she had not attached the RTS Letter to her complaint, and she alleges that the Court's Pro Se Case Administrator, Richard Loury, called her on January 6, 2023, and left her a voicemail advising her of that fact.  (ECF No. 14, PageID.59).  On January 9, 2023, Golden filed a copy of her RTS Letter.  (ECF No. 3).  Also on January 9, 2023, Loury e-mailed Golden and advised her that she needed to either "pay the $402 filing fee or submit an Application to Proceed Without Prepaying Fees or Costs."  (ECF No. 24, PageID.121).  The docket reflects that Golden paid the filing fee on January 17, 2023.

## 2.    *Henry Ford's Motion to Dismiss*

On July 20, 2023, Henry Ford filed a motion to dismiss.  (ECF No. 12).  Henry Ford's motion is straightforward, based on black-letter law requiring that "[a] Title VII

---

[3] *See* http://www.mied.uscourts.gov/index.cfm?pageFunction=proSeDocs (last visited February 23, 2024) ("After the submission process has been completed, a confirmation email will be sent to the provided e-mail address.").

4

plaintiff must file his employment-discrimination complaint in the district court within 90 days of receiving his right-to-sue letter from the EEOC." *Martin v. Ford Motor Co.*, No. 21-6089, 2022 WL 17076782, at *1 (6th Cir. Aug. 23, 2022) (citing 42 U.S.C. § 2000e-5(f)(1) and *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998)).  In short, based on Golden's admissions that she received the RTS Letter on October 7, 2022, Henry Ford properly calculated that Golden was required to file her complaint on or before January 5, 2023.  And, because the docket reflects that Golden filed her complaint on January 6, 2023, Henry Ford argues that it was one day late and thus is subject to dismissal.

   *3. Golden's Response to Henry Ford's Motion*

  In her response to Henry Ford's motion to dismiss, Golden repeatedly and unequivocally asserted that she filed her complaint on January 5, 2023:

> I the plaintiff, Catherine Golden, filed the instant claim on January 5, 2023, predicated upon Title VII of the Civil Rights Act for race and gender discrimination under 42 U.S.C. §§ 2000e et. seq.  EFC (sic) No. 1, Plaintiff's Complaint, filed 1/05/23….
>
>    *  *  *
>
> The Right to Sue letter expressly states the following: "[if] you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice."  I in fact did file the claim on January 5, 2023.
>
> Defendant's counsel asserts that Ninety (90) days after October 7, 2022 elapsed on January 5, 2023 without the Plaintiff filing her Complaint in this case.  That is not accurate.  I filed my claim on January 5, 2023, within the 90 days requirement.  The court in fact received my claim on January 5, 2023; however, I was contacted by the court clerk, Richard Loury, regarding my lack of inclusion of the Right to Sue Letter.  He contacted me by phone on January 6, 2023 and left a voicemail message stating in part, "Hi this is Richard from

the United States District Court[.]  [T]he clerk's office received the documents that you submitted to our website[.]  [T]here was a complaint and then a letter that you attached, but we do not see the notice of the right to sue letter in the documents …"  I contacted him and he allowed me to email a copy of the Right to Sue Letter. Therefore, I was given permission to submit the letter, but that should not preclude me from pursuing my claim, which was filed on January 5, 2023, within the 90-day requirement ….

I can therefore provide proof of the voicemail message and my filing date of January 5, 2023, which I received the documentation to sign dated January 6, 2023, after submitting my Right to Sue Letter upon the request of the Court Clerk.

(ECF No. 14, PageID.57, 59).

The purported "proof" Golden submitted however, was the seven-page Fabricated Complaint.  Many aspects of the Fabricated Complaint are suspect.  First, the salient date in the file stamp headers on each of the Fabricated Complaint's seven pages is a different font size than the rest of the digits; on the first page, the "05" portion of the "01/05/23" file stamp appears to be a different font size than the rest of the digits, and in the file stamp headers on the other six pages, the "5" in the "05" appears to be a different font size:

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.1   Filed 01/05/23   Page 1 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.2   Filed 01/05/23   Page 2 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.3   Filed 01/05/23   Page 3 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.4   Filed 01/05/23   Page 4 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.5   Filed 01/05/23   Page 5 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.6   Filed 01/05/23   Page 6 of 7

Case 2:23-cv-10047-DML-DRG   ECF No. 1, PageID.7   Filed 01/05/23   Page 7 of 7

6

(ECF No. 14, PageID.62-68).

Second, unlike the Filed Complaint with the "01/06/2023" *above* the form's "Date of signing" line, the Fabricated Complaint reflects "01/05/2023" beginning to the left of the "Date of signing" line,[4] which, as Loury explained at the hearing, would not happen if the Court's system had been used to create the document:

<u>Filed Complaint</u>                                  <u>Fabricated Complaint</u>

(*Id.*, PageID.67; Tr., PageID.178; ECF No. 1, PageID.6).

Third, on the Fabricated Complaint, the right edge of the "3" in "2023" has a small protrusion, which, as explained further below, appears to have resulted from a poor attempt to replace the original "01/06/2023" date.  *See infra* at 8-9.

4.  *The Court Sets an Evidentiary Hearing and Warns Golden*

The Court set the matter for an evidentiary hearing and advised Golden that she **"shall be prepared to testify, under oath, as to the representations she made in her response to Henry Ford's motion to dismiss, including that she 'filed the instant claim on January 5, 2023' and that '[t]he court in fact received [her] claim on January 5,**

---

[4] It appears that the Fabricated Complaint's entire "Date of signing" line has been shifted to the left as compared to the Filed Complaint, whose "Date of signing" line is aligned with the "Signature of Plaintiff" and "Printed Name of Plaintiff" lines. The Court also notes that in the Fabricated Complaint, the verbiage above the "Date of signing" line has been altered; the apostrophes in the two references to "Clerk's Office" are not where they belong.  (*Id.*, PageID.67).

2023,' as well as to **the authenticity of the [Fabricated Complaint]** she attached to her response brief." (ECF No. 19, PageID.85) (emphasis in original). The Court also ordered Court Clerk's Office staff member Richard Loury to appear at the evidentiary hearing, as Golden had alleged in her response to Henry Ford's motion to dismiss that the two had communicated about her complaint around the time of its filing. (*Id.*, PageID.84-86). The Court "**strongly encouraged [Golden] to have her own counsel at the evidentiary hearing.**" (*Id.*, PageID.86) (emphasis in original). The Court even adjourned the hearing at Golden's request so she could attempt to find counsel to represent her. (10/11/23 text entry). Ultimately, the Court re-set the evidentiary hearing for December 20, 2023, with all of the same instructions and caveats in its prior Notices. (ECF No. 23).

5.   *The Evidentiary Hearing Testimony and Exhibits*

The evidentiary hearing began with Henry Ford's counsel offering into evidence the version of the complaint he claims Golden sent him as part of her response to the motion to dismiss. (Tr., PageID.153; ECF No. 24, PageID.96-103). Obviously, that version should have been an exact copy of the one Golden filed on the docket as an attachment to her response brief, *i.e.*, the Fabricated Complaint. But, alas, it was not. The version Golden sent to Henry Ford's counsel reflects *both* the "01/05/2023" date that begins to the left of the "Date of signing" line (as in the Fabricated Complaint) *and* the "01/06/2023" date above the "Date of signing" line (as in the Filed Complaint), with a very small portion of the "3" in "01/05/2023" overlapping with the first "0" in "01/06/2023":

Date of signing:  01/05/2023 01/06/2023

Signature of Plaintiff  _Cathy Golden_____

Printed Name of Plaintiff    Cathy Golden_____

(ECF No. 24, PageID.101).[5]  The Court will refer to this document as Golden's "Two-Date
Complaint."   Because the Two-Date Complaint contained the same file-stamp header
mismatched fonts as the Fabricated Complaint, the Court asked Golden how she received
it.  (Tr., PageID.160).  Golden testified that it was an attachment to a January 9, 2023 e-
mail that she received "directly" from Loury.  (*Id.*).  Golden then sent the undersigned's
Case Manager two e-mails: (1) a copy of Loury's January 9, 2023 e-mail that referenced
attachments, but did not actually have the attachments; and (2) another copy of that e-mail
that did have the attachments, one of which Golden claims is an exact copy of the complaint
she actually filed in this case.  (Tr., PageID.160-63).[6]  The Court marked Loury's January
9, 2023 e-mail as Exhibit 3 (ECF No. 24, PageID.111-13), and marked the complaint that
Golden claims was attached to that e-mail as Exhibit 4 (the "Purported Loury E-Mailed
Complaint") (Tr., PageID.160-63, 173; ECF No. 24, PageID.114-120).  While the Court at
the hearing had been focused on the Purported Loury E-Mailed Complaint's mismatched
file stamp dates (which appear the same as the other mismatched dates discussed above),

---

[5] This explains the small protrusion discussed above, *supra* at 7, that appears on the "3" in "2023"
of Golden's Fabricated Complaint.

[6] Golden testified that when she filed her complaint on January 5, 2023, she received an e-mail
confirming that filing.  (Tr., PageID.157).  She further testified, however, "I did not save [that e-
mail] because I just ended up downloading the documents from that E-mail and it's been almost a
year.  So I don't have the actual E-mail that has my documents and all the things that I sent or that
I received from the Court."  (*Id.*, PageID.157-58).  This contention is suspect in the light of the
fact that Golden claims to have saved Loury's January 9, 2023 e-mail.

it also has a bizarre "Date of signing" line that appears to show some sort of circles attempting to blot out the "01/06/2023" date seen in the Two-Date Complaint:

Date of signing:  01/05/2023

Signature of Plaintiff

Printed Name of Plaintiff    Cathy Golden

(ECF No. 24, PageID.119).

The Court then took testimony from Loury.  Loury accessed and displayed his Court e-mail account, went into his "sent e-mail" folder, found his January 9, 2023 e-mail to Golden (which included its attachments), and, lo and behold, the complaint he sent her back (the "Actual Loury E-Mailed Complaint") is an exact copy *of the Filed Complaint*; it bears uniform file stamp font sizes, is stamped as having been filed "01/06/23," and reflects "01/06/2023" *above* the "Date of signing" line, where it belongs.  (*Id.*, PageID.123-29; Tr., PageID.170).

The Court then questioned Loury about his experience with the Court as it relates to the filings at issue in this case.  Loury testified that he has worked on at least 5,000 cases over the last 11 years, the last three of which as the Pro Se Case Administrator.  (Tr., PageID.174).  Loury testified that he is very familiar with how the file stamp headers look on documents filed with the Court.  (*Id.*, PageID.174-75).  Loury testified that, in all his years with the Court, he has never seen a file stamp header like the one in the Fabricated Complaint, with some digits being a different font size than the rest.  (*Id.*, PageID.175-77).  Loury also testified about the fact that in the Fabricated Complaint, the "01/05/2023" begins to the left of the "Date of signing" line.  (*Id.*, PageID.178).  Loury testified that the

Court's system would place the cursor above the line, not to its left.  (*Id.*, PageID.178-79). He further testified that he has never seen a complaint filed with a date off to the left of the line as is the case with the Fabricated Complaint.  (*Id.*, PageID.191).

Finally, Loury testified that the Court has no record of Golden filing anything on January 5, 2023.  (*Id.*, PageID.179, 182).  Loury corroborated that testimony by offering into evidence an IT Department log of filing activity from Golden's e-mail account, which shows precisely when Golden uploaded her filings in this case.  (*Id.*, PageID.180-84; ECF No. 24, PageID.130).  The log shows that Golden uploaded her first filing on "01-06-23 at 14:44 and 56 seconds."  (Tr., PageID.181; ECF No. 24, PageID.130).[7]

At the very end of the hearing, Golden offered into evidence an additional copy of the complaint.  Golden asked to enter what she first characterized as "a copy of my complaint that I printed out myself that has everything – what I filed on the 5th," asking if "this even matters."  (Tr., PageID.195).  Before she handed the copy to the Court, the Court noted, "it matters" and that it was "happy to take it into evidence and make it an exhibit." (*Id.*)  The Court then made copies and the complaint was marked as Exhibit 9 (the "Exhibit 9 Complaint").   The Exhibit 9 Complaint has no file stamp headers, and reflects "01/05/2023" in its proper location above the "Date of signing" line:

Date of signing:        01/05/2023
                     _____

Signature of Plaintiff

Printed Name of Plaintiff    Cathy Golden

---

[7] The Court notes that Golden lodged no objections to any of the exhibits, and answered "No, Your Honor," when asked if she had any objection to them. (Tr., PageID.195).

(ECF No. 24, PageID.145).

But when the Court began asking Golden about this document, her testimony got noticeably softer. First, Golden testified, "So this is what I printed out from my saved files on my computer." (Tr., PageID.196). But when the Court questioned her point blank, "are you contending this is what you filed?," Golden answered, "I'm contending I saved it on that day on my computer, on the 5th." (Tr., PageID.197). Having not answered the Court's question in the affirmative, the Court followed up, "Okay. But that's different than saying you filed it on the 5th. Are you saying that this is the document you filed on the 5th?" (Tr., PageID.198). Tellingly, instead of answering in the affirmative, Golden answered, "I mean, that's when I signed it. That's when I went to file it on the website." (*Id.*). Golden concluded by asserting that, with respect to the Fabricated Complaint, she did not see a discrepancy in the file stamp header font sizes. (Tr., PageID.199; *see also* Tr., PageID.157 ("So as far as my complaint, I don't see any discrepancies as far as dates.")).

## B.    Applicable Legal Standards

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Because a plaintiff need not plead around affirmative defenses, that rule "'is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations'" defense. *Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 616 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). "But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case … dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo*, 676 F.3d at 547.

12

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

13

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless[,]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed[.]" *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

When a court is presented with a motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Jones v. ETS Staffing*, No. 09-14374, 2011 WL 1627634, at *1-2 (E.D. Mich. Apr. 28, 2011) (judicial notice taken of EEOC RTS letter appended to motion to dismiss *pro se* plaintiff's federal discrimination action). Here, under these principles, the Court may take judicial notice of Golden's RTS letter. (ECF No. 3).

### C.   Analysis

#### 1.   Golden's Complaint is Untimely and Subject to Dismissal

In her complaint, Golden asserts that she filed her EEOC charge on December 20, 2020, and, in two separate places, confirms that she received the RTS Letter on October 7, 2022. (ECF No. 1, PageID.5, 7). The RTS Letter, which was also dated October 7, 2022, expressly warned Golden, "If you choose to file a lawsuit against [Henry Ford] on this

14

charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.**  Receipt generally occurs on the date that you (or your representative) view this document.  You should keep a record of the date you received this notice."[8]  (ECF No. 3, PageID.10) (emphasis in original).  The EEOC's instructions were consistent with the governing law, which provides that, in addition to exhausting administrative remedies in a timely fashion by filing an EEOC charge within the requisite time period, a plaintiff must file her federal Title VII claims within 90 days after the EEOC gives notice of the right to sue.  *See* 42 U.S.C. § 2000e-5(f)(1); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) ("The federal courts have strictly enforced Title VII's ninety-day statutory limit.").  "As many courts have held, Title VII's [90] day period applies to pro se plaintiffs, and even one day's delay is fatal to a claim."  *Hudson v. Genesee Intermediate Sch. Dist.*, No. 13-12050, 2013 WL 6163220, at *2 (E.D. Mich. Nov. 25, 2013) (internal citations omitted) (citing cases).  The 90-day deadline also applies to Title VII retaliation claims.  *See Wohadlo v. Tentcraft Inc.*, No. 1:18-cv-1442, 2020 WL 13694136, at *2 (W.D. Mich. Jan. 28, 2020) ("Plaintiff's Title VII retaliation claim … would be time-barred (absent equitable tolling) because Plaintiff failed to file her claim within ninety days after she received her right-to-sue letter from the EEOC.").

---

[8] The RTS Letter makes clear that its issuance date and receipt date can be the same because right-to-sue letters are sent via e-mail.  (*Id.*, PageID.12) ("Receipt generally means the date when you (or your representative) opened this e-mail or mail.").  At any rate, as noted, Golden twice admitted in her complaint to receiving the RTS Letter on October 7, 2022, and she also admitted to receiving the RTS Letter on that date in her response to Henry Ford's motion to dismiss.  (ECF No. 14, PageID.57).  This was all after being advised by the EEOC of the receipt date's significance.

In light of Golden's admissions that she received her RTS Letter on October 7, 2022, the deadline for her to file her Title VII complaint was January 5, 2023.[9]  Having carefully reviewed the testimony and documentary evidence in this matter, the Court concludes that Golden filed her complaint (the Filed Complaint) on January 6, 2023, and that the one attached to her response brief (the Fabricated Complaint) was fabricated by her to make it appear as if it had been filed on January 5, 2023.  In making these findings, the Court notes the following evidence:

- The Filed Complaint contains a file stamp header that is completely uniform, whereas the Fabricated Complaint has a file stamp header that contains mismatched fonts.  Loury testified that he has never before seen a file stamp header with such mismatched fonts.

- The mismatched fonts on the Fabricated Complaint occur only with respect to the two digits that relate to the timeliness of Golden's complaint.

- The Filed Complaint's "Date of signing" line has the "01/06/2023" date above the line, where Loury testified the system would place it, whereas the Fabricated Complaint's "Date of signing" line has the "01/05/2023" to the left of the line, which Loury testified would not happen through the use of the Court's system.  Loury further testified that he has never seen a complaint

---

[9] The Court notes that in *Graham-Humphreys*, 209 F.3d at 557, the Sixth Circuit "resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration[.]") (emphasis in original).  However, this principle is relevant only where there is a dispute regarding a plaintiff's actual receipt date of a right-to-sue letter.  The principle is inapplicable here, where Golden admits receiving the RTS Letter on October 7, 2022.  *See Keller v. Sierra-Cedar, LLC*, No. 4:22-CV-00013, 2024 WL 345501, at *3 (M.D. Pa. Jan. 30, 2024) ("When the actual date of receipt is known, that date controls . . . Thus, a right to sue letter received via e-mail message triggers the ninety-day statute of limitations period.") (internal quotation marks omitted); *Chambliss v. Entergy Corp.*, No. 22-2488 DIV. 2 CONMAG, 2023 WL 7114669, at *6 (E.D. La. Oct. 27, 2023) ("Courts within the Fifth Circuit have similarly held that, when a claimant receives notice that the right to sue has been issued through means other than mail, the 90-day period commences regardless of whether the letter has been received.") (citing cases); *Chowaniec v. City of Chicago*, No. 22-2892, 2023 WL 4234398, at *1 (7th Cir. June 28, 2023) (affirming dismissal of Title VII complaint filed "91 days after [plaintiff] received the right-to-sue notice by email . . .").

filed with a "Date of signing" date to the left of the line as is the case with the Fabricated Complaint.

- In the Fabricated Complaint, the "01/05/2023" date to the left of the "Date of signing" line has a protrusion on the right edge of the "3." Comparing that page against the same page from the Two-Date Complaint and the Purported Loury E-Mailed Complaint shows that the protrusion is the result of an attempt to conceal the original date of "01/06/2023" that appeared above the "Date of signing" line in the Filed Complaint.

- Loury, in open court for all to see, opened his sent e-mail folder, opened the actual e-mail he sent to Golden containing the complaint she had filed, and displayed that document. That document – the Actual Loury E-Mailed Complaint – was identical to the Filed Complaint.

- Loury testified that the Court has no record of Golden filing anything in this case prior to January 6, 2023. Court documents – the Pro Se Documents Log and the e-mail confirmation – that confirm that the first complaint Golden filed was the Filed Complaint on January 6, 2023.

The Court finds Loury's testimony credible and Golden's testimony not credible. Loury testified methodically about his experience at the Court, how he had never seen a complaint contain mismatched fonts like the one presented by Golden, and how the Court's records are consistent with Golden having filed her complaint on January 6, 2023. On the other hand, Golden had no explanation whatsoever for any of her various complaints or their bizarre "Date of signing" lines. Golden's testimony was also suspect in that she claims she did not save the original e-mail from the Court confirming her complaint's filing, but did save an e-mail from Loury which was sent just a few days later. Golden also refused to recognize that the mismatched fonts in the Fabricated Complaint's file stamp header are in fact mismatched, when the font size difference is clear to the naked eye.

In sum, the Court finds that the first complaint Golden filed in this case was the Filed Complaint, filed on January 6, 2023. The Court also finds that after Golden received

Henry Ford's motion to dismiss arguing that her complaint was one day late, she altered the Filed Complaint to create the Fabricated Complaint.  She then filed the Fabricated Complaint on the docket as an attachment to her response to Henry Ford's motion to dismiss to make it appear as if her complaint had been timely filed on January 5, 2023.[10] Because Golden was required to file her complaint on January 5, 2023, it was untimely and Henry Ford's Motion to Dismiss (ECF No. 12) should be granted.  *Hudson*, 2013 WL 6163220, at *2 ("As many courts have held, Title VII's [90] day period applies to pro se plaintiffs, and even one day's delay is fatal to a claim.").  *See also Colston v. Boston Mkt. Corp.*, No. 17-11649, 2018 WL 1404417 (E.D. Mich. Feb. 14, 2018) (case dismissed where filed either 91 or 92 days past EEOC right to sue letter), *report and recommendation adopted,* 2018 WL 1397862 (E.D. Mich. Mar. 19, 2018).

> 2.     *Even if Golden's Complaint was not Untimely, It Should be Dismissed as a Sanction for Her Fraud on the Court and Henry Ford*

Even if Golden could show that her complaint was timely filed – for instance, if she could show that she was mistaken about the date she actually received the EEOC's RTS Letter, and that she actually received it a day (or more) later – it would still be subject to dismissal because she committed a fraud on the Court and Henry Ford.

Federal courts have the inherent authority to sanction conduct that is taken in bad faith or is "tantamount to bad faith."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S.

---

[10] The Court also finds that Golden altered the Filed Complaint to create the Two-Date Complaint and the Purported Loury E-Mailed Complaint.

752, 767 (1980)).  "A party's fraud on the court, such as fabrication of evidence and perjury, shows bad faith." *Clark v. Abdallah*, No. 21-10001, 2023 WL 2401695, at *3 (E.D. Mich. Mar. 8, 2023) (citing *Hino Motors Mfg. USA, Inc. v. Hetman*, No. 20-10031, 2021 WL 6285280, at *3 (E.D. Mich. Dec. 14, 2021), *report and recommendation adopted*, 2022 WL 54540 (E.D. Mich. Jan. 5, 2022)).  A finding of bad faith requires "a clear record of delay or contumacious conduct." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).  The offending party's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* at 705 (quoting *Tung–Hsuing Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).

Fraud on the court has been defined as "conduct that 'set[s] in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.'" *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 874 (E.D. Mich. 2017) (citations omitted). "Under this definition, when evidence has been fabricated or falsified to support a party's claim, a fraud on the court has occurred." *Farrar v. Lapan*, No. 20-10554, 2022 WL 4122043, at *4 (E.D. Mich. Sept. 9, 2022) *aff'd,* No. 22-1908, 2023 WL 3151093 (6th Cir. Apr. 28, 2023).  "When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate." *Id.* (quotation omitted). *See also Plastech*, 257 F. Supp. 3d at 878 ("Not surprisingly, case law is replete with instances where a district court dismissed an action with prejudice upon finding that a party

fabricated evidence and presented that evidence to the court in support of its claims.").

Under the Court's inherent powers to sanction a party for engaging in fraudulent conduct during the course of litigation, the court considers the following factors: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Farrar*, 2022 WL 4122043, at *3 (quoting *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (citation omitted)). Here, an analysis of these factors clearly favors dismissing Golden's complaint.

### a. Willfulness, Bad Faith, or Fault

The Court explained above in detail the basis for its finding that Golden altered the complaint she actually filed in this case to make it appear that she had filed it a day earlier. She did this in response to Henry Ford's motion to dismiss which argued that because her complaint was a day tardy, her case was subject to dismissal. In other words, Golden's actions were perpetrated in order to directly impact not only the resolution of this case, but its ability to proceed at all. Golden offered no explanation, and showed no remorse for her actions. She even refused to admit that the file stamp header fonts on the Fabricated Complaint were mismatched when any objective person whose attention was directed to them would see the discrepancies. The Court thus finds that Golden's conduct in fabricating evidence and submitting it to the Court in response to Henry Ford's motion to dismiss constitutes intentional, willful bad faith, and a fraud on the Court and Henry Ford. This weighs very much in favor of sanctioning Golden.

### b. Prejudice

That Golden's conduct prejudices Henry Ford is plain. Had she admitted that she filed her complaint on January 6, 2023, Henry Ford would not have incurred the expense of its counsel filing a reply brief and traveling to and from and attending the evidentiary hearing. And, more generally, "'submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Carroll-Harris v. Wilkie*, No. 17-11711, 2019 WL 2205851, at *7 (E.D. Mich. May 22, 2019) (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009)). In such cases, defendants bear "enormous additional effort and expense to ferret out plaintiff's lies and to double check every piece of information." *Id.* (quoting *Garcia*, 569 F.3d at 1179). This factor thus also weighs in favor of sanctioning Golden.

### c. Warning

The Court went to great lengths to advise Golden of its concerns about her conduct. Specifically, when the Court set the matter for an evidentiary hearing it advised Golden that she **"shall be prepared to testify, under oath, as to the representations she made in her response to Henry Ford's motion to dismiss, including that she 'filed the instant claim on January 5, 2023'** and that **'[t]he court in fact received [her] claim on January 5, 2023,'** as well as to **the authenticity of the [Fabricated Complaint]** she attached to her response brief." (ECF No. 19, PageID.85) (emphasis in original). The Court "**strongly encouraged [Golden] to have her own counsel at the evidentiary hearing.**" (*Id.*, PageID.86) (emphasis in original). While the Court may not have specifically warned

Golden that her conduct could lead to the imposition of any particular sanction, its reference to the Fabricated Complaint's "authenticity," directive that she would be testifying "under oath," and advice that she obtain counsel, was more than enough to ensure that Golden was aware of the seriousness of the Court's concerns about the matter. Moreover, in light of the turpitude inherent in the submission of a fabricated document to the Court in the course of litigation, "[t]he Court need not specifically warn the parties that [doing so] could lead to a sanction.  There are legal standards, including the Federal Rules of Civil Procedure and Rules of Professional Conduct, that set forth a party's and lawyer's responsibility to certify that factual contentions have evidentiary support." *Farrar*, 2022 WL 4122043, at *5 (citing Fed. R. Civ. P. 11(b); Mich. R. Prof'l. Cond. 3.3).  Indeed, "when a party is willing to submit altered documentation in [the course of the litigation], an additional warning would be superfluous." *Id.*  Thus, this factor weighs in favor of sanctioning Golden.

### d.    *Less Drastic Sanction*

Here, no less drastic sanction than dismissal of the case is sufficient to address Golden's conduct.  Ordering Golden to merely pay a fine would not "remedy the harm to the public's interest in preserving the integrity of the courts and would inadequately deter potential future misconduct." *Carroll-Harris*, 2019 WL 2205851, at *8.  Similarly, allowing Golden to litigate the case after having fabricated evidence would improperly convey to other litigants that they have "'everything to gain, and nothing to lose' by manufacturing evidence." *Id.* (citation omitted).  Finally, employment cases like Golden's are extremely personal and often turn on the plaintiff's testimony about the events in

question.  Having fabricated evidence and submitted it to the Court in an effort to survive Henry Ford's motion to dismiss, there is simply no aspect of this case that could be tried "while maintaining the integrity of the judicial system." *Farrar*, 2022 WL 4122043, at *6. Thus, no sanction less drastic than dismissal with prejudice would be sufficient.

In sum, even if Golden could show her complaint was not untimely, having found that her fabrication of evidence constitutes a fraud on the Court that was perpetrated willfully and in bad faith, and in order "[t]o ensure the integrity of the judicial process and deter future parties from engaging in similarly egregious conduct," her case should be dismissed with prejudice. *See Plastech*, 257 F. Supp. 3d at 878; *Carroll-Harris*, 2019 WL 2205851, at *8 ("when a party fabricates discovery, 'the interests of the judicial system militate strongly in favor of dismissal of the suit so as to deter all litigants from such misconduct in the future.'"); *Farrar*, 2022 WL 4122043, at *7.

### 3.  Henry Ford's Request for an Award of Attorney Fees

At the conclusion of the evidentiary hearing, Henry Ford's counsel requested that the Court award "a reasonable attorney fee" in the amount of $9,940 for fees it incurred litigating the case through the completion of the evidentiary hearing.  (Tr., PageID.203). However, it appears that the vast majority of the time Henry Ford's counsel spent litigating this case would have been incurred prior to Golden filing her response to Henry Ford's motion to dismiss.  And, even then, Henry Ford's reply brief (ECF No. 15, PageID.72) was extremely short and made no reference to the Fabricated Complaint attached to Golden's response brief or to the Two-Date Complaint Golden sent to counsel by mistake. Accordingly, while Henry Ford may file a motion requesting reimbursement of the

reasonable attorney fees it incurred on account of Golden's fraudulent conduct, the Court will not grant an award of fees at this time.

## III.    CONCLUSION

For all of the reasons stated above, **IT IS RECOMMENDED** that Henry Ford's motion to dismiss **(ECF No. 12)** be **GRANTED** and that Golden's complaint be **DISMISSED WITH PREJUDICE**.


Dated: February 23, 2024                     s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge



### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another

party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
